Shackelford, J.,
delivered the opinion of the.'Court.•
The complainants, Jesse A. .Crouch, and, son,: were the owners of, a...small tract of. land containing .five acres,'.on *384 Fall Branch, in Washington County, on .which there was valuable water power, and on which they had erected a saw-mill and carding machine. On the 8th day of April, 1856, they sold this tract of land to the defendant, Shepard, and executed a deed after the giving of the boundaries. The deed recites, “with a full power to erect all necessary works for the purposes of carrying on any kind of machinery said Shepard may see fit to erect and build on the premises, together with all and singular, its appurtenances,” etc. After the .usual covenants of warranty and seizin in the deed, is the following recitation: “It is understood, the said bargainors in the above conveyance, retain the right of a water lane running through the above premises, so as to receive the water as soon as the said James Shepard is done with it at his saw-mill, so as not to prove detrimental to the said Shepard; and the object of reserving said water, is to run other machinery below, and for no other purpose.”
The deed was duly acknowledged and registered. At the execution of the said deed, and cotemporaneous with it, an agreement was entered into by which the complainants were to remove their carding-machine and sawmill within a specified time, so as to enable the said Shepard to build his mill; and he was to build a sawmill costing about one thousand dollars. The complainants removed the mill and carding-machine within the time specified. Shepard built his saw-mill, but placed it upon the opposite bank of the creek from where the old mill stood. After the building of the mill by the defendant, Shepard, the complainant built on his lot be *385 low a earding-macbine, to be run by water, and opened bis water-lane through the lot conveyed. By placing the saw-mill on the opposite bant of the creek,- the channel of water was turned, and not sufficient passed the wheel of the mill to propel the machinery of the complainant, and he constructed another lane, running into the original one, so as to gather the surplus water that passed over the dam, which originally passed on the south bank of the stream, at the old mill site. To do this, it became necessary to build a small dam below — which the complainant did — about eighteen inches or two feet high. After this was done the defendant, Shepard, removed it, and forbid the complainant to replace it, or use the second water-lane erected by him. Thereupon this bill was filed, in which the complainant insists that he is entitled to use all the water of the stream after it passes the saw-mill of the defendant, and to have the use of this water he has the right to use all proper means to collect it, and the defendant having made it necessary, by building his mill on the opposite bank has so changed the current that it will not pass into the water-lane contemplated by the contract. An injunction was prayed for and obtained, restraining Shepard from disturbing his dam and use of the water.
The defendant, in his answer, sets out his deed, and insists, upon a proper construction of it, the complainant is only entitled to the water that passes over and under the wheel of his said mill, and that he is not entitled to the surplus water that runs over the dam; that he has been greatly damaged by the complainant, .in mak *386 ing two water-lanes, and building a dam and flooding bis wheel; that by the two lanes he is- cut off from the use of his stables; he prayed for an account of the damage done by the complainant. The answer was filed as a cross-bill. It was agreed the original bill should be taken as an answer to the cross-bill.
The weight of the proof is, by the building of the saw-mill of the defendant on the opposite side of the stream from the old site, the channel of the stream was changed, and a water-lane from the mill would not gather the surplus water that passes over the dam; that to gather the surplus water,, the short water-lane made by the complainant was necessary, and to throw the- water into this lane a dam of eighteen inches is requisite; that . the erection of this lane obstructs the passway of the defendant to his stables; that the bridge made by the complainant over the water-lane is unsafe, and in erecting the dam the complainant dug up part of the soil of the defendant; that the water passing under or through the saw-mill was not sufficient to propel the machinery of the complainant.
The Chancellor was of opinion, that, by the terms of the deed and reservations, the complainant had the right only to run a simple water-lane so as to receive the water at the saw-mill so soon as the defendant was done with it, that is, to take the water immediately below the saw-mill wheel, but so as not to interfere with the sawing; that he had no right to take the water at two places, or by two water-lanes; that he had no right to the waste water running over the dam, and no right to erect a dam on the premises to collect the waste *387 water, or the water running around the saw-mill; that the defendant had the right to erect any kind of machinery on the lot.
The bill of the complainant was dismissed, and a decree for an account against the complainant upon the cross-bill; from which he has appealed to this Court.
The determination of the questions involved depend upon the construction to be given to the deed of the 8th of April, 1856, with the reservations therein contained. By the terms of the deed, the complainant granted to the defendant the full power to erect any kind of works, for the purpose of carrying on any sort of machinery he may see fit to build on the premises, with the reservation of the right of a water-lane through the granted premises, so as to receive the water as soon as the grantee is done with it at his saw-mill, so as not to prove detrimental to him. The object of the complainant in reserving the use of the water was to run other machinery.
For the proper construction of this deed with its reservations, it becomes necessary to look to the situation of the parties, and the property which is the subject matter of the deed, and the intention and purpose of the parties in making it, and to give it that construction which the person making the deed believed the other to have accepted: 2 Kent, 556. It is a rule of law the whole contract should be considered in determining the meaning of any or all of its parts, for the reason the same parties make all the contract, and may be supposed to have the same purpose and object in view in all of it; and if this purpose is more clear in *388 some parts tban in others, those which are obscure may be illustrated by the light of others: 2 Parsons on Contracts, 15. It is held, the rule that the language of a deed or contract is to be taken more strongly against the party using it, though it be a rule, according to Lord Bacon, drawn out to the depths of reason, applies only to cases of ambiguity in the words, or when the exposition is requisite to give them lawful effect. It is a rule of strictness and rigor, and not to be resorted to but when other rules of exposition fail. The modern, and more reasonable practice, is, to give to the language its just sense, and to search for the precise meaning; and one requisite is to give due and fair effect to the contract, without adopting the rule either of rigor or of an indulgent construction: 2 Kent, 556.
Guided by this rule, what was the intention of the parties in the execution and reservations of this deed ?
The complainant was the owner of the lot conveyed. The lands were granted to the defendant with the power to erect any kind of machinery he saw proper. The complainant had, at the time of the conveyance, a sawmill and carding-machine on the land, propelled by the water power. By the terms of the agreement, cotempo-raneous with the deed, he binds himself to remove them within a given time, and the defendant agrees to build a saw-mill costing about one thousand dollars. By the terms of the deed, there is a distinct reservation of the water after it has passed the saw-mill of the defendant. At the time of the execution of this contract the water of the stream passed on the south side, by the saw-mill of the complainant, and the building of a water-lane *389 from that point 'would have collected the -water that passed the saw-mill, as well as the water that passed the dam.
Erom the agreement made contemporaneous with the deed, it may be inferred, the intention of the parties was, that the saw-mill would be built at or near the old site, not changing the water. The reservation to build a water lane, and the use of the water, gives to the complainant an absolute right to use it. A reservation is held to operate as a grant to a right out of the granted premises, by force and effect of the reservation itself: Parsons on Contracts, 23; Angell on Water Courses, 186. The object and purpose of this reservation by the complainant, was, to use the water after it had passed the defendant’s mill, for the purpose of propelling machinery. The amount of water to be used by him was not limited. He was entitled to the use of it; but in so doing, it was not to be detrimental to the defendant. And at' the execution of the contract, it was clearly the intention of the parties, the complainant should have the use of the water after it had passed the mill of the defendant; and the water flowing on the south side by the old mill site, it was reasonable to suppose that a water lane would collect water sufficient to propel his machinery. Such was evidently the intention of the parties at the execution of the contract. The defendant saw proper to build his mill on the North bank of the stream, and has thereby divided the channel, and a water lane from his saw-mill will not collect the water that runs over the dam. It is insisted for the defendant, he has, by the contract, a right to build *390 machinery on any part of the lot, and if the complainant is allowed to take the water that passes over the dam, it will defeat this right; and that he is only entitled to the water that passes over or under the wheel at his mill; and that he should not have the right of using the surplus water that passed over the dam. To this construction we cannot assent. The grant of an undivided share in a stream of water, will not authorize the grantee to appropriate or modify the stream to the injury of others, who have a joint interest in it. The property in a stream of water is indivisible: Angell on Water Courses, 91. To give the construction to the deed, the complainants were only entitled to the water that passed the defendant’s saw-mill, would, in effect, destroy the reservations of the grant, as he could only operate his machinery while the defendant’s mill was running. If he did not see proper to run his mill, the complainants could not have the use of the water. Such a construction would be wholly inconsistent with the object and intention of both the parties at the execution of the deed. By the terms of the contract, the complainant was to have the use of the water after it passed the defendant’s saw-mill. As the stream ran at the execution of the contract, he would have received the surplus water from the dam in his water lane, as well as that which propelled the machinery. The change of the location cannot alter the rights of parties so as to interfere with the reserved right of the complainants.
By the act of the defendant, in diverting the water from the channel, it becomes necessary for the complainant, to operate his machinery, and he has a right to *391 build another water lane, and pass it into that lane contemplated by the deed; but, in building that lane, or in using the necessary means to collect the water, he has no right to flood the machinery of the defendant, or injure the property, otherwise than would necessarily follow from the acts of the defendant, in compelling him to erect a water lane at a different point than that contemplated by the deed.
We are of opinion, upon a fair construction of the contract, the complainant is entitled to the use of all the water of the stream, after it passes the • mill of the defendant, and that he’ has the right to construct a water lane or lanes necessary to carry it to operate , his machinery; but in so doing, he cannot construct them to the injury or detriment of the defendant, otherwise than necessarily follows as a consequence of the defendant’s having changed the channel of the stream to the opposite bank; and if the lane be detrimental to him, it is an injury brought upon himself by doing the same.
The decree of the Chancellor will be reversed, the eros-bill dismissed, and a decree for the complainants.