JEFFERS *v.* HAWN *et al.*

(*Knoxville,* Sept. Term 1947 (May Session 1948).)

Opinion filed June 12, 1948.

R. L. Pope, of Knoxville, and Jeffers & Jeffers, of Oneida, for plaintiff in error.

Howard H. Baker, of Huntsville, for defendants in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

Jeffers, who is the petitioner for *certiorari* here, sold his stock of merchandise and store equipment at Oneida to respondents, Wayne Hawn and mother, and the same is evidenced by the signed agreement of the parties dated September 7, 1943, reciting the sale and the payment of the purchase price. The next and last paragraph of this agreement reads as follows:

"It is further agreed between the above parties that the store building is rented to Wayne Hawn and mother, Mrs. Freeman Hawn, for the price of $35.00 per month so long as Wayne Hawn and mother desire to rent said building and pay the above price of $35.00 per month."

The store referred to in the above quotation is the one in which was located the merchandise and equipment sold by Jeffers to these respondents. On April 29, 1947

Jeffers gave the respondents written notice that he was "terminating said lease or rental contract" as of May 31, 1947. The reply of the respondents refusing to surrender possession quoted the lease provision above quoted.

Shortly after May 31, 1947, Jeffers brought an unlawful detainer suit and the issue was decided against him in the General Sessions Court, the Circuit Court and the Court of Appeals. It was the insistence of Jeffers in the lower Courts, as it is here, that since this lease puts it in the power of the lessees to terminate the lease at will it, therefore, as a matter of law, confers the same power upon the lessor, petitioner here, and, therefore, the Courts below erred in not holding this lease to be terminable at the will of lessor at the end of any month, upon proper notice.

The Court of Appeals held that it was a tenancy limited in express terms to the lives of the lessees subject to termination at their option and, as such, is valid. That Court further held that this lease indicates no intention on its face "to create an actual estate for life." Then the Court of Appeals in affirming the judgment of the lower Court concluded as follows:

"On the other hand, the right of the plaintiff to recover possession of the premises cannot be sustained in the present action. However, we do not here hold that he is without remedy in appropriate proceedings. Nor do we, from the record before us, attempt to pass upon the respective rights of the parties not here asserted."

Petitioner has construed the final above quoted statement of the Court of Appeals to mean that he, Jeffers, can only obtain relief by bill in equity having for its purpose the modification of the written lease. Therefore, the position of petitioner here is that if there are

facts which justify modification in equity the burden is upon the lessees to institute such proceedings.

It is apparent from the very language of the lease that the lessees may terminate it at will. That being true, the determinative question here is whether such provision does, as a matter of law, under the facts of this case, empower the lessor to terminate this lease at will. If not, then these lessees, at their option, may keep the lease in force during their lives so long as they pay the stipulated monthly rent.

It is the insistence of the petitioner, lessor, that such a lease is lacking in mutuality unless it be held that a lease expressly terminable at the will of one party is, as a matter of law, equally terminable at the will of the other party. A number of cases of other jurisdictions are cited in support of that proposition.

The briefs do not refer to any Tennessee case dealing with a similar lease, and no such Tennessee case is found after independent search therefor.

This question upon leases with similar provisions has arisen in sister jurisdictions and the courts have reached contrary conclusions. In 137 A. L. R. commencing at page 367 is collected a number of cases which hold that an option upon the part of the lessor to terminate at will "could be" inferred from the fact that the lease by its terms authorizes the lessee to terminate at his will, although the lease does not by express terms give such option to the lessor. Commencing at page 369 of the same volume are collected cases in which other Courts have refused to hold that a tenancy at will is inferred from the fact that one party only to a lease was given expressly the option to terminate that lease.

The annotator of the volume referred to, in discussing this disagreement among the courts, observes

on page 382 that those courts adopting the rule that an option to terminate at will is inferred, as a matter of law, to one party to a lease when that option is expressly given by the lease to the other party is a rule not applicable to a unilateral contract "in which a promise is given for doing an act, and the offerer is bound only if either (a) his offer constitutes an option supported by a valid consideration (citing cases), or (b) the offeree has accepted the offer by performing the act (citing cases) or by beginning performance." That is, if the lessor proposes to give the lessee a lease "so long as (he) desires" at the rental of $35 per month, provided the lessee will at the time of the execution of the lease pay to the lessor a specified consideration, and the lessee does pay the specified consideration and in turn receives the contract leasing the property to him so long as he desires, then the lessor is without authority to terminate that lease, because in exchange for such a lease he has been paid the valid consideration proposed by him. Mutuality would exist under such facts and the case would come directly within the rule stated in *Cherry* v. *Smith*, 22 Tenn. 19, 24, 39 Am. Dec. 150 in this language: "The fact that the agreement is optional as to one of the parties, and obligatory as to the other, does not destroy its mutuality. If there be sufficient consideration on both sides, it is mutual." This rule is re-stated in *Bradford* v. *Foster*, 87 Tenn. 4, 9, 9 S. W. 195 and *Dark Tobacco Grower's Co-op. Ass'n* v. *Mason*, 150 Tenn. 228, 251, 263 S. W. 60 and cases there cited.

Therefore, with the rule just stated in mind, the question necessarily next suggested is whether this record shows these lessees to have paid the lessor petitioner a valid consideration in exchange for his written agreement to lease them this property for so long as they

desire at a rental of $35 per month. While this lease contract cannot be varied by oral evidence "the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties as aids in determining the meaning of the contract—are matters proper to be looked to by the Court in arriving at the intention of the parties to the contract." *Southern Pub. Ass'n* v. *Clements Paper Co.*, 139 Tenn. 429, 432, 201 S. W. 745, L. R. A. 1918D, 580.

The case here under consideration was heard upon oral evidence by the Circuit Judge without a jury. One of the two co-lessees, Wayne Hawn, respondent here, testified as follows, in so far as pertinent to the point under discussion:

"We turned and went back and looked over the stock of merchandise and after we came to an agreement and I said what about leasing or renting your equipment for a year and he laughed and said no, I am going out of business, I want to get out for good, if you will buy this equipment you can have this building so long as you want it, but says unless you buy the equipment I am not interested in selling. . . . State to the Court what the actual fair market value of the equipment and merchandise was on this date, your best judgment?'

"I would say about fifty per cent of what I paid."

"We agree on this as long as I wanted it and he hoped I would retire if I would buy his equipment along with the other merchandise. I said will you sign one in writing to that effect and he said I sure will. We read it over together and signed it."

Mrs. Hawn, the other co-lessee, respondent here, testified on this point as follows:

"He said he was going to retire and live off the rent, and if we would buy the stock of goods and the equip-

ment we would have the building for $35.00 a month as long as we wanted it. We asked if he would sign an agreement like that and he said he would.''

This testimony is not substantially contradicted. In fact, the fair conclusion from the testimony of the petitioner, Mr. Jeffers, is a corroboration thereof. He testified that prior to the execution of this lease agreement the following took place:

''The first talk we had about it, Mr. Hawn asked me how long he could get the building for. I told him he could have it for one year, two years, three-years or so far as I knew maybe as long as he wanted it, that is what I said, so far as I know maybe as long as you want it; in other words, I didn't know when I would want to go back in business here.''

So it is that after making the statement in the first conversation that the respondent might have the building ''so far as I knew maybe as long as he wanted it,'' this lessor, petitioner, signed an agreement that the leslees might have the building so long as they wanted it, they, the lessees, having agreed to comply and having complied with his requirement that they purchase his equipment at what the evidence discloses and the Circuit Judge has found to be double its actual value.

It is a fact that the lease agreement does not upon its face expressly recite that the purchase of the equipment at the price stated is in consideration of this lease with the provision in question contained therein. However, the lease agreement does recite in its first paragraph that these respondents had bought the equipment for a specified price paid and then in the next paragraph it is recited that petitioner does lease the building to respondents for so long as they want it at a specified rent, thereby indicating, as explained by the testimony, a sim-

ultaneous contract as to both matters. This evidence was clearly competent under the authority of *Southern Pub. Ass'n* v. *Clements Paper Co.*, *supra*, and many other like cases which might be cited. No doubt, this is the reason no objection was made to the introduction of that evidence. Further, many cases are cited in 137 A. L. R. 375 in support of the statement of the annotator that "by the weight of authority a lease is not rendered invalid, on the ground of lack of consideration or want of mutuality, solely by inclusion therein of a provision entitling one of the parties to terminate the lease, provided the consideration for the lease is otherwise sufficient, although not expressly referable to the option."

So, in this Case by the practically undisputed evidence it is shown that the petitioner received a valid consideration for his lease of this building to the respondent for \$35 per month so long as they desired it. The agreement is, therefore, enforcible on principle, and under the authority of *Cherry* v. *Smith*, *supra*, and that line of cases. It results that the affirmance by the Court of Appeals of the judgment of the Circuit Court dismissing petitioner's unlawful detainer suit is correct. Therefore, the petition for *certiorari* must be denied.

All concur.