**COBLE SYSTEMS, INC., d/b/a Leasco Truck Rental, Plaintiff-Appellant,**

**v.**

**The GIFFORD COMPANY, et al, Defendants-Appellants.**

Court of Appeals of Tennessee, Middle Section.

June 2, 1981.

Permission to Appeal Denied by Supreme Court Feb. 1, 1982.

---

C. Hayes Cooney, Daniel R. Loftus, Watkins, McGugin, McNeilly & Rowan, Nashville, for plaintiff-appellant.

Wm. C. Moody, Moody & Moody, Nashville, for defendants-appellees, General Ins. Services, Inc., and Charles Walter Clarkson.

Phillip North, Howell & Fisher, Nashville, for defendant-appellant The Gifford Co.

## OPINION

CANTRELL, Judge.

This is an action for damages to a truck owned by Coble Systems, Inc., d/b/a Leasco Truck Rental, and leased to the appellee, The Gifford Company. Coble's suit is based on the truck rental agreement or alternatively on the theory of bailment. The Trial Court held that the liability of Gifford was limited by the rental agreement to $2,000.00.

On March 15, 1978, two of Gifford's agents rented a truck from Coble and one of the agents executed a truck rental agreement on a form developed and used by Coble. The front side of the form had blank spaces for, among other things, a description of the truck, the date, the party renting the truck and a section headed "Insurance Changes." The blanks in that section gave the renter the following options:

| | |
|---|---|
| Renter to provide liability insurance as specified in Paragraph 4 | Renter must sign here – /s/ T.L.Reed |
| Renter to pay total cost of loss or damages to vehicle (See Par. 9) | Renter must sign here – /s/ T.L.Reed |
| Customer's Limits of liability are: $1,000.00 straight trucks, $2,000.00 each tractor, trailer or refrig. unit. (See Par. 9) | Renter must sign here – N/A |

The first two entries above were signed "T.L. Reed." Mr. Reed was Gifford's Operations Manager and there is no dispute about his execution of the agreement. The third entry had a notation on it of "N/A". Mr. Reed also signed on the main signature line agreeing on behalf of The Gifford Company to abide by the terms and conditions of the agreement including those on page 2.

On the reverse side, or page 2, of the form are the terms and conditions of the agreement referred to in the print above. Headed "Rental Agreement" that side of the form contains the following pertinent sections:

8. Renter agrees to release, indemnify and hold Owner harmless from and against: ...

(d) Loss or damage to the Vehicle during the rental period provided, however, that (i) Renter's liability shall be limited to $1,000 for a straight truck or $2,000 for each tractor, trailer, or refrigerated unit. Notwithstanding any of the foregoing, Renter shall be fully liable for all damage to the Vehicle if the Vehicle is used, operated or driven in violation of the provisions of this contract, or if the loss or damage results from collision with the structure of any underpass or other object because of insufficient clearance, whether or height or width.

. . . . .

9. Renter agrees to report any accident, loss of or damage to the Vehicle to the Owner immediately, and in writing, within 24 hours after such accident, loss or damage. In the event the Vehicle is damaged during the Renter's use thereof, and such damage is sufficient to require the Vehicle be placed in a repair shop, the Renter agrees to pay the daily rental charge on the Vehicle from the date the Vehicle is damaged until it has been returned to an operating status by Owner. Ordinary wear and tear excepted.

On March 22, 1978, the truck while being operated by one of Gifford's drivers was involved in an accident and totally de-stroyed. The resulting damage amounted to $37,093.76. Coble sued Gifford for the damages on the written agreement and on the theory of bailment. Gifford denied liability, claiming that Paragraph 8(d) limited their liability to $2,000.00. Gifford also filed a cross-claim against its insurance agent, General Insurance Services, Inc., on the theory that if they were liable the agent was responsible to them for failing to cover the loss.

The Trial Court in a Memorandum Opinion held that parol evidence was not admissible to vary or contradict the terms of the agreement and made the following conclusions:

1. Plaintiff is entitled to recover against defendant for breach of contract and bailment.

2. The damages to the plaintiff were directly and proximately caused by the negligence of defendant's driver.

3. The lease contract by its terms, paragraph 8(d), limits defendant's liability to $2,000.00.

4. Defendant failed to carry the burden of establishing its affirmative defense that plaintiff agreed to procure collision insurance.

5. Defendant failed to carry the burden of a right to recover against the cross-defendant.

6. Under the terms of the lease agreement plaintiff is entitled to recover reasonable attorneys' fees.

A final order was entered granting Coble a judgment of $2,000.00 and attorneys' fees of $750.00. Coble has appealed and raises the following issues for review:

1. Did the Chancellor err in holding that the plaintiff was entitled to recover only Two Thousand ($2,000.00) Dollars in damages as a result of the breach of the rental agreement herein involved by the defendant-appellee, The Gifford Company?

2. Did the Chancellor err in awarding the plaintiff-appellant only Seven Hundred Fifty ($750.00) Dollars in attorney's fees herein?

Gifford has also appealed and raises the following issues:

1. If the Trial Court was incorrect, contrary to defendant's insistence, in its reason for limiting defendant's liability to $2,000.00, then is the same conclusion justified on other grounds?

2. Did the Trial Court err in excluding evidence of the prior course of dealing between plaintiff and defendant and other parol evidence?

3. If the Trial Court erred in limiting defendant's liability, did the Trial Court also err in dismissing defendant Gifford's cross-claim against its insurance agent?

■■■ We will discuss first the parol evidence offered by the parties in the trial of this cause and the Chancellor's subsequent ruling that it was not admissible. This question frequently arises when the courts are faced with a problem of construing a written agreement. And the uses to which such evidence can be put are frequently confused. Under the circumstances of this case there are two reasons why parol evidence might be admissible. The first is to explain or clarify what could be conceived of as an ambiguity between Paragraph 8(d) of the agreement and the assumption of liability for losses on the front of the agreement. With respect to the offer of parol evidence to attempt to explain or resolve this ambiguity we agree with the Chancellor that parol evidence was not admissible. Any ambiguity resulting from the contradictory terms in the agreement is a patent ambiguity which parol evidence may not remedy. Such evidence is admissible only where the ambiguity is latent. *White v. Kaminsky*, 196 Tenn. 180, 264 S.W.2d 813 (1954); *Teague v. Sowder*, 121 Tenn. 132, 114 S.W. 484 (1909); *Moseley v. Goodman*, 138 Tenn. 1, 195 S.W. 590 (1917). In *Teague v. Sowder*, the Supreme Court quoted from *Weatherhead v. Sewell*, 28 Tenn. 271 (1848) in making the distinction between patent and latent ambiguities:

A latent ambiguity is where the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of.

A patent ambiguity is one produced by the uncertainty, contradictoriness, or deficiency of the language of an instrument so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain. *Weatherhead v. Sewell*, 9 Humph., 295.

Ambiguity that may be removed by parol evidence is not a doubt thrown upon the intention of the party in the instrument by extrinsic proof tending to show an intention different from that manifested by the words of the instrument. It must grow out of the question of identifying the person or subject mentioned in the instrument. [121 Tenn. at 148, 149, 114 S.W. 484]

■ The alleged ambiguity in the instrument under consideration is one produced by the "uncertainty, contradictoriness, or deficiency" of the language in the agreement. Therefore parol evidence would not be admissible to explain or vary the terms of the agreement.

The appellant cites a general rule which allows proof of the circumstances surrounding the execution of an agreement, including any course of performance between the parties, as an aid in determining the meaning of the contract. *Kroger Company v. Chemical Securities*, 526 S.W.2d 468 (Tenn. 1975). In that case the Court quoted from *Jeffers v. Hawn*, 186 Tenn. 530, 212 S.W.2d 368 (1948), where the Court stated:

While this lease contract cannot be varied by oral evidence, 'the course of previous dealings, the circumstances in which the contract was made, and the situation of the parties as aids in determining the meaning of the contract—are matters

proper to be looked to by the court in arriving at the intention of the parties to the contract.'

Also in *Frierson v. International Agricultural Corporation*, 24 Tenn.App. 616, 148 S.W.2d 27 (1940), the Court said:

No one disputes the proposition that you cannot vary the terms of a written contract nor contradict it by oral evidence, but these rules do not restrain the court from a survey of the whole situation and an ascertainment of that which the parties had in mind and the purpose or object to be obtained by a proposed agreement.

■ So proof of the surrounding circumstances and prior dealings of the parties may have been admissible in this case. However after a careful review of the record, including the proof offered on the circumstances surrounding the execution of this agreement and the proof of prior dealings between the parties, we find that there are no inferences to be drawn from that proof that are helpful on the question of the interpretation of this agreement. Therefore, while it may have been admissible and while the Chancellor may not have considered such proof, his action was at most harmless error. Tennessee Rules of Appellate Procedure, Rule 36(b).

■ From the four corners of the agreement then, what did the parties intend when this agreement was executed? There are other rules of construction that can be applied to help resolve the apparent conflict. First and most important is the primary rule that the intent of the parties must prevail. *Ohio Cas. Co., Inc. v. Travelers Indemnity Company*, 493 S.W.2d 465 (Tenn.1973). Second, the courts will construe the writing so as to avoid the conflict if possible. *Bartlett v. Phillips-Cary Mfg. Co.*, 216 Tenn. 323, 392 S.W.2d 325 (1965). Third, if the provisions are so repugnant that they cannot stand together, the first shall be given effect and the latter rejected. 17 Am.Jur., *Contracts*, § 267; *Bartlett v. Phillips-Cary Mfg. Co., supra; Smithart v. John Hancock Mut. Life Insurance Company*, 167 Tenn. 513, 71 S.W.2d 1059 (1934).

Fourth, written or typewritten terms will control printed parts of· an agreement where there is an apparent inconsistency. 17 Am.Jur.2d Contracts, § 271; *Tindell v. Bowers*, 31 Tenn.App. 474, 216 S.W.2d 752 (1949). Fifth, doubtful language in a contract should be interpreted most strongly against the party who drew or prepared it. 17 Am.Jur.2d *Contracts*, § 276; *Fuller v. Orkin Exterminating Co. Inc.*, 545 S.W.2d 103 (Tenn.App.1975). This last rule is to be applied, however, only where other rules of construction fail to give certainty to the written .expression. 17 Am.Jur.2d *Contracts*, § 276; *Crouch v. Shepard*, 44 Tenn. 383 (1867).

■ Applying these rules of construction to the contract before us, we are convinced that Gifford agreed to be liable for the total cost of loss or damage to the truck. That fact is apparent from the face of the agreement where Gifford's agent signed in the slot containing that provision. The limitation on liability was marked "N/A".

The limitation on liability contained in Paragraph 8(d) on the reverse side of the contract can be reconciled with the absolute liability assumed on the front of the form if we recognize that Paragraph 8(b) is obviously meant to apply when the limit is selected on the front of the form. (Although the front refers to Paragraph 9 instead of 8(c), obviously an inadvertence.) Or if the latter paragraph is deemed so repugnant to the first provision covering losses or damage to the truck that the two cannot co-exist, the second provision should be disregarded under the rule cited above. The provision assuming liability is first in the agreement, is specific, and was designated as the obvious choice in the handwriting of Gifford's agent.

In either case, the first provision stands representing the intent of the parties. Therefore we hold that Gifford is responsible for the total loss of the truck and the Chancellor's judgment should be increased to $37,093.76.

In Paragraph 10(d) of the agreement the renter agrees to pay the owner's attorney's fees in a reasonable amount for services rendered in connection with the collection of any amount due under the agreement. The Chancellor awarded Coble's attorneys $750.00 although the record contains their affidavit showing a reasonable fee of $5,962.00. The suggested fee was based on 108.4 hours of work in preparing for trial and trying this case at a rate of $55.00 per hour. We think the fee sought in the Trial Court was a reasonable fee and the Chancellor's judgment should be modified to award Coble $5,962.00 in attorney's fees. The factors to be considered in awarding attorney's fees are the nature of the responsibility assumed by the attorneys, the amount involved, and the character and extent of services which they have performed. *Tennessee United Paint Store, Inc. v. D. H. Overmyer Warehouse Co.*, 62 Tenn.App. 721, 467 S.W.2d 806 (1971). After a consideration of all of the facts and circumstances presented by the record, we think the amount sought by Coble is reasonable.

The final issue involved in this appeal concerns the liability of Gifford's insurance agent for any judgment against Gifford. The Chancellor held that Gifford had not made out a case against the agent and dismissed Gifford's cross-claim. From a careful review of the record we are convinced that the Chancellor was correct in that conclusion. Gifford's contention in this respect is based on his insistence that the insurance agent was instructed to provide whatever coverage was required by Coble. However it should be remembered that the lease agreement did not require Gifford to furnish insurance. It merely provided that they would be responsible for any loss or damage. The proof is simply not clear as to what requirement was communicated to General Insurance Services, Inc., by its client Gifford as to its insurance requirements. Therefore the Chancellor was correct in declining to give judgment over against the insurance agency.

The Chancellor's decree will be modified as indicated and, as modified, affirmed. The costs on appeal will be taxed to Gifford.

MODIFIED AND AFFIRMED.

TODD, P. J., and LEWIS, J., concur.