IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2002 Session

## DAVID L. SCHWAB v. DAVID E. MILLER, AN INDIVIDUAL, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 26484     R.E. Lee Davies, Judge**

_____

**No. M2001-00932-COA-R3-CV - Filed June 7, 2002**

_____

The Chancery Court of Williamson County held that in order to claim a major benefit of an employment contract the employee had to be employed when the other contingencies in the contract were met. We affirm the lower court's interpretation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and JOHN B. HAGLER, SP. J., joined.

Gerald A. Smith, Jr., Brentwood, Tennessee, for the appellant, David L. Schwab.

H. Lee Barfield, II, Coburn Dewees Berry, and Rebecca S. Kell, Nashville, Tennessee, for the appellee, David E. Miller, David E. Miller Development Company, and MSB Governors, LLC.

**OPINION**

**I.**

In 1987 David Schwab began the development of a golf course and residential community in Brentwood called the Governor's Club. After extensive work on the project, Mr. Schwab failed to obtain construction financing. In 1995 he met David E. Miller, a real estate developer, who proposed to revive the project through an entity to be formed by Mr. Miller. David E. Miller Development Company then hired Mr. Schwab and put him in charge of the development. Initially the parties only had an oral agreement. Almost two years later Mr. Schwab presented Mr. Miller a handwritten agreement including a provision that as a part of his compensation Mr. Schwab would receive Lot 70 in the development "at closing." Mr. Schwab followed up with a typed draft of an agreement giving him first choice of any lots that Miller Development received in the development. Mr. Miller did not accept these proposals.

Nothing further happened for another year. In April of 1998 Mr. Miller presented Mr. Schwab with a draft employment agreement. Mr. Schwab proposed an amendment that would give him Lot 70 if he were terminated, but the parties continued to negotiate. Finally, on April 15, 1998, the parties executed a written agreement which contained the following provision relative to Lot 70:

> 2. <u>Compensation</u>. In consideration of Schwab's performance of his duties as set forth in Paragraph 1 above, and in consideration of all prior contributions which Schwab has or may have made in connection with the Project, including any expenses incurred in connection therewith and any services rendered relating to the Project, Schwab shall be compensated as follows, so long as this Agreement is in force and Schwab is an employee of Company:
>
> . . . .
>
> (iv) MSB currently owns, or has the right to acquire without further consideration, Lot 70 (the "Lot") in the Project. MSB intends to hold the Lot and to utilize any proceeds from the sale or other disposition thereof if necessary to fund costs and expenses of the Project. If MSB does not so sell or dispose of the Lot at the time Owner has fully repaid all principal, interest and expenses related to Owner's first mortgage financing for the Project and all guaranties, collateral and other obligations of Owner's members have been released by such first mortgage lender (or, if the same have previously been called or drawn or payments have been made thereunder, all amounts so called, drawn or paid, and all required returns thereon, have been repaid to such member in full), then Company shall cause MSB to convey the Lot to Schwab as additional consideration hereunder.

The agreement also contained the following paragraph relative to termination:

> 4. <u>Termination</u>. Schwab is as an employee at will and, accordingly may be terminated by the Company at any time with or without cause. Upon any termination or upon Schwab's resignation for any reason, Schwab shall be paid any amounts due through the date of such termination or resignation (less any amounts which Schwab may owe to the Company). Following any termination or resignation, Schwab shall not be entitled to any further compensation hereunder. Notwithstanding the foregoing, if Schwab has been terminated without cause and so long as Schwab is in full compliance with the provisions of Section 3 hereof, Schwab shall be entitled to continue to receive that percentage of Net Cash Flow Distributions to which he has become entitled by the terms of Section 2(iii)(b) above, following such termination. Additionally, Schwab shall be entitled to receive a founder's golf membership in The Governor's Club Golf Club, provided MSB has the legal right to deliver same.

The original financing came from SouthTrust Bank of Alabama National Association. It consisted of a construction and development loan and letters of credit serving as completion bonds for the utilities, roads, and the golf course. The loan and letters of credit were secured by a first mortgage on the property and by a guaranty signed by Mr. Miller and the Miller Family Trust. A limited guaranty was also executed by Henry Crown and Company.

In June of 1998 the borrower replaced the construction and development part of the first mortgage with a loan from an affiliate of Oaktree Capital. The letters of credit continued to be secured by the first mortgage, although it does not appear that the secured parties ever had to draw on them.

In August of 1999, pursuant to the power under its agreements with the developer, Oaktree terminated the Miller parties' ties to the project. Mr. Schwab's employment with Miller Development also ended on August 3, 1999. He was immediately rehired by Oaktree to continue with the project.

## II.

The trial court refused to award Mr. Schwab Lot 70 because the contingencies relating to his right to the lot were not satisfied during his employment. Mr. Schwab attacks the trial court's decision on two or three different fronts. First, he argues that the written agreement is simply a memorialization of the prior oral agreement. In Mr. Schwab's version of that agreement he is to receive Lot 70 and 25% of all other money or property removed from the project by the Miller entities as compensation for his prior contributions.

We think Mr. Schwab's argument misses the point. Over an extended period of time Mr. Miller consistently rejected Mr. Schwab's proposal that he get an unconditional promise to Lot 70. The written agreement places certain conditions on that right. When the parties execute a written agreement, all prior negotiations, promises, and understandings are merged into the contract. *Marron v. Scarbrough*, 314 S.W.2d 165 (Tenn. Ct. App. 1958). The last agreement as to the same subject matter which is signed by all the parties supercedes all former agreements. *Bringhurst v. Tual*, 598 S.W.2d 620 (Tenn. Ct. App. 1980).

Next, Mr. Schwab argues that the court misinterpreted the agreement in holding that the contingencies to his right to receive Lot 70 had to be satisfied while he was still employed by the company. Paragraph 2, however, provides that Mr. Schwab "shall be compensated as follows, so long as this Agreement is in force and Schwab is an employee of Company." Four subparagraphs follow, each providing a part of his compensation package. Subparagraph (iv) contains the conditions under which he would get Lot 70. We think the only plausible construction of those provisions is the one adopted by the trial court.

Finally, Mr. Schwab argues that all the contingencies were met prior to his termination on August 3, 1999. It is undisputed that MSB still owned the lot, and it had not been sold to help

finance the development. But the uncontradicted proof also shows that the letters of credit did not expire until May of 2000. The first mortgage given to SouthTrust was still in effect until that date, as were the guaranties given by the Miller parties.

Mr. Schwab argues that the Oaktree loan was actually secured by a second mortgage since the SouthTrust deed of trust had not been fully released. In making that argument, however, he makes the defendant's point that the contingencies were not satisfied until well after he was the employee of someone else. The trial judge, however, interpreted the term "first mortgage financing" to include the Oaktree loan, since it replaced the original construction and development loan. It is undisputed that the Oaktree loan was foreclosed, and was thus not paid while Mr. Schwab was an employee of Miller Development Company. In either event the result is fatal to Mr. Schwab's position.

In addition the chancellor held that the part of the sentence "all guaranties, collateral and other obligations of owner's members have been released" refers to the guaranties of the Miller parties even though they were not "owner's members." On this point the chancellor considered parol evidence to clarify what he found to be a latent ambiguity. *See Coble Systems, Inc. v. Gifford Co.*, 627 S.W.2d 359 (Tenn. Ct. App. 1981). Mr. Schwab objects to the parol evidence because he considers the ambiguity, if any, to be patent and not latent.

We think that the chancellor was correct in considering the parol evidence whether the ambiguity is patent or latent. The goal of the court is to ascertain the intention of the parties. In that pursuit, even in the absence of an ambiguity, it is permissible to consider the situation of the parties and the accompanying circumstances at the time the contract was entered into. *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn. 1983). It helps to know that at the time Mr. Schwab signed his employment agreement none of the "owner's members" were guarantors of the obligations covered by the first mortgage. The principal guarantors were Mr. Miller and his family trust. They were the ones to benefit from the provision in the contract. Therefore a permissible interpretation is one that covers "all guaranties" regardless of whether they were given by the owners members.

The judgment below is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellant, David L. Schwab.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.