R. H. Bartlett, Complainant-Appellee,

*v.*

The Philip-Carey Manufacturing Company,
Defendant-Appellant.

392 S.W.2d 325.

(*Knoxville,* September Term, 1964.)

Opinion filed June 28, 1965.

324

John K. Morgan, Chattanooga, of counsel, Morgan & Garner, Chattanooga, for complainant-appellee.

Phil B. Whitaker, Chattanooga, of counsel, Witt, Gaither, Abernathy & Wilson, Chattanooga, for defendant-appellant.

Mr. Justice Dyer delivered the opinion of the Court.

Complainant-appellee, R. H. Bartlett, instituted this action to recover of defendant-appellant, Philip-Carey Manufacturing Company, the amount of $1,901.42 allegedly due as premium commissions for sales consummated from January 1, 1962 through May 31, 1962, while the former was in the latter's employ. The cause was heard on bill and answer and a decree entered in favor of complainant for the amount sought. The cause is here on agreed stipulation of facts and a brief review of the facts will be helpful.

Complainant, for a number of years, had been employed by defendant as a salesman receiving his compensation in the form of a draw and by commissions. There are two kinds of commissions, viz., base and premium. Premium commissions are in effect bonuses or rewards given for superior salesmanship which come into play only after the salesman surpasses a certain high quota. Base commissions, on the other hand, are not dependent upon excellence in selling as they are payable on sales starting from zero.

The issue here is these premium commissions and defendant admits, if any commissions are owed to complainant, the amount of $1,901.42 awarded by the Chancellor is correct.

Complainant worked for defendant five full months commencing 1 January 1962. It is readily apparent that had he remained in the defendant's employ for the duration of the calendar year while maintaining the same high standard of salesmanship, he doubtless would have been eligible for a premium commission for his annual

sales. The question here is whether or not such a commission is due after only five months of employment. Of course defendant would agree that if complainant's sales for the five months had exceeded the prescribed *annual* quota, then he would be entitled to the premium commission. Such, however, is not the case.

Complainant insists he is entitled to premium commissions on sales during the first five months of 1962 on the ground the monetary figure set as the 1962 annual quota for premium commission purposes should be broken down on a monthly basis, or if not monthly, then the annual quota should be multiplied by five-twelfths. Defendant insists to do so would violate the terms of the written contract of employment.

The record is silent, as are the briefs, on the matter of when in point of time the premium commissions are paid. If paid at the end of each month, then obviously complainant's case would be greatly strengthened. If, however, as appears most likely, such commissions are paid only at the end of the calendar year then defendant's position is enhanced. As the commissions *sub judice* are in effect bonuses, we must assume they are paid at year's end as is the custom with most enterprises. In any event this single matter is not determinative of this lawsuit.

There are two paragraphs in the record contained in the employment contract which control the outcome of this cause both of which were quoted in the Chancellor's memorandum opinion: (1) paragraph number three on page three, and (2) the first full paragraph on page five. The pertinent parts thereof are set out herein:

Paragraph three, page three:

The agreement to pay commissions in addition to your

annual draw is limited to a combined maximum of $11,121 on a calendar year basis, but this limitation does not apply to factored commissions on Product Groups 1 and 2 if you attain 80% of your annual dollar quota for Product Group 3. In the event of your transfer or termination during the calendar year, your combined maximum will be determined by applying to the above combined maximum the same monthly percentages used to determine your quotas for a portion of the calendar year.

First full paragraph, page five:

* * * In the event of termination of your employment during the calendar year, your percentage of quota achievement will be computed by dividing your net sales for each Product Group, after excluding net sales of all products for which no quotas have been assigned, by your dollar quota for that Group *for the calendar year* * * *. (Emphasis added.)

A third paragraph, the last one on page four, was also deemed relevant by the Chancellor. It provides as follows:

If in the applicable case numbered above your accumulated commission earnings at base rates, or at base and premium rates, on orders sold by you and shipped on or before the date of * * * (5) termination, exceed your accumulated draw, you will be paid such excess less any previous commissions paid.

Complainant relies largely upon paragraph three, page three, while the defendant's reliance is upon the first full paragraph on page five. The Chancellor had this to say:

Paragraph 3, page 3, of the employment contract has to do with maximum combined pay for sales in all cate-

gories and also refers to termination of employment. The last sentence of that paragraph provides that the combined maximum compensation is to be worked up on the same monthly percentages used to determine quotas for a portion of the calendar year. This language used by the employer is clear and concise * * *. Paragraph 3, page 3, of the contract is controlling, and everything in conflict therewith is repugnant to the clear intention to fully compensate this commission salesman for his total sales.

We agree that paragraph three, page three "has to do with maximum combined pay * * * and also refers to termination of employment". This does not mean, however, that the matter of premium commissions is dealt with therein. In fact, the wording itself appears to eliminate such commissions since "this limitation does not apply to factored commissions * * * if you attain 80% of your annual dollar quota for Product Group 3". As noted by counsel for defendant, the purpose of this paragraph is to limit liability for compensation, not to provide a source thereof.

The last sentence of the first full paragraph on page five does, however, deal specifically with the matter of premium commissions, i. e., quota achievement. It also deals with the question of termination, and at no point does it authorize a monthly computation of premium commissions. It expressly refers to the "dollar quota for that Group for the calendar year".

Appellant assigned five errors which it contends require a reversal of this cause. For purposes of this opinion, the first four can be treated as a single assignment. The fifth assignment is that the Chancellor erred in finding that defendant's interpretation of the contract

would work a forfeiture of commissions earned by complainant.

■ The first four assignments in effect challenge the validity of the Chancellor's construction of the contract, contending that paragraph three, page three and paragraph one, page five are not repugnant. We are unable to agree with the Chancellor that a repugnancy exists for the plain and simple reason that the two paragraphs are talking about separate and distinct matters.

■ Counsel for appellee correctly state the legal principle that "if two clauses of a contract are so repugnant to each other that they cannot stand together, the first shall be received and the latter rejected". However, the *sine qua non* of this rule is a repugnancy; we have already noted that there is an absence of repugnancy in the contract before the Court.

The principle was recognized in the case of *Bank of Commerce & Trust Co. v. Northwestern Life Ins. Co.,* 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380 (1930), but the Court there stated that it must construe the contract so that all clauses will be in harmony, if such a construction is possible. It would seem that the construction placed upon the contract by the Chancellor violated this duty, since there is no logical inconsistency in the two paragraphs.

■■ Bartlett, through counsel, relies on the following language from *Weatherly v. American Agricultural Chemical Co.,* 16 Tenn.App. 613, 65 S.W.2d 592 (1933):

Where contract involved in suit was drafted by defendant's attorney, language thereof, if ambiguous, must be construed most strongly against the defendant.

Again we agree with the principle expressed, but as there is no ambiguity in the contract here before us there is no basis for applying it. Merely because language happens to be technical or complex to the layman does not render it ambiguous.

"If there is no ambiguity in the contract, its interpretation becomes a question of law." *Foote Mineral Co. v. Maryland Cas. Co.*, 173 F.Supp. 925, 931 (E.D.Tenn. 1959). Also see *Aetna Life Ins. Co. of Hartford, Conn. v. Bidwell*, 192 Tenn. 627, 630, 241 S.W.2d 595 (1951) to same effect.

Perhaps one of the parties to this contract subjectively thought that premium commissions were payable in a factual situation such as the one at bar. However, the well-established rule is that:

The juristic effect of a contract is of necessity governed by the expressed intention of the parties. We look for the operative meaning of the symbols of expression designed to affect their legal relations. Their unexpressed intention is immaterial. 4 Williston Contracts Sec. 601 (3d ed. 1961).

Several cases arising in this jurisdiction have so held, some of which are: *Associated Press v. W.G.N.S., Inc.*, 48 Tenn.App. 407, 348 S.W.2d 507 (1961); *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955); and *Home Beneficial Ass'n. v. White*, 180 Tenn. 585, 177 S.W.2d 545 (1944).

It follows that the first four assignments of error are well-taken. Since complainant had no vested rights in what he considered his earned premium commissions for his first five months employment, there can

be no forfeiture since there is nothing to forfeit. Thus, the fifth assignment of error is also good.

Accordingly the decree of the Chancellor must be reversed and the bill dismissed with costs.