**NATIONAL GARAGE COMPANY,**
Plaintiff-Appellant,

v.

**GEORGE H. McFADDEN & BRO., INC.,**
Defendant-Appellee.

Court of Appeals of Tennessee,
Western Section.

May 20, 1975.

Certiorari Denied by Supreme Court
Nov. 3, 1975.

James T. Allison and Ratner, Sugarmon & Lucas, Memphis, for plaintiff-appellant.

Newton P. Allen and Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for defendant-appellee.

CARNEY, Presiding Judge.

The Plaintiff below, National Garage Company, a partnership composed of I. E. Hanover, Marvin Ratner and others, has appealed from a judgment of the Circuit Court of Shelby County dismissing Plaintiff's suit for $31,000 representing rent for one year on the building located at 62 West Court Avenue in Memphis, Tennessee, known as the National Garage Building. Plaintiff claimed that a lease signed by the parties was automatically renewed for one additional year.

The Defendant, George H. McFadden & Bro., Inc., had been a major tenant in the building since the late 1930's. The parties began negotiating in the fall of 1968 for a new lease on the premises. After a series of discussions which lasted several months, the parties entered into a new lease agreement on June 23, 1969. The lease agreement is some seven pages long and we copy only the pertinent portions herein as follows:

"LEASE

INDENTURE OF LEASE made as of June 23, 1969, between THE NATIONAL GARAGE COMPANY, a partnership composed of JACK A. BELZ, JEROME H. HANOVER, I. E. HANOVER, and THE HEIRS OF I. J. RATNER, herein called 'Landlord' and GEO. H. McFADDEN & BRO., INC., herein called 'Tenant', wherein it is agreed:

\* \* \* \* \* \*

2. The term of this lease shall be Two (2) Years, beginning August 1, 1969, and ending July 31, 1971.

3. Tenant hereby covenants and agrees to pay to Landlord as rent for the aforesaid premises the sum of SIXTY TWO THOUSAND DOLLARS ($62,000), payable in advance in monthly installments, in amounts, and maturing as follows:

TWO THOUSAND FIVE HUNDRED EIGHTY THREE AND 33/100 DOLLARS ($2,583.33) per month, on the first day of August, 1969, and a like amount on the first day of each successive month throughout the term of this lease.

\* \* \* \* \* \*

18. And on the expiration of the term of this lease to deliver unto Landlord the possession of said building, lot and premises, cleared of all persons, goods and things not properly belonging to the same, and in as good order and condition as the same were received, destruction or damage by fire, storm or other casualty, not the fault of the Tenant or its agents, and ordinary wear and tear excepted.

\* \* \* \* \* \*

24. No renewal of the lease will be binding on either party unless it be in writing and signed by Landlord and Tenant.

\* \* \* \* \* \*

30. It is mutually agreed and understood that in the event Tenant should hold over after the termination of this lease, either by expiration of the term herein stated or otherwise, that such holding over shall not be construed as a holding over from month to month, or year to year, or term of years, or for a periodic term of any kind, but such holding over shall be from day to day and solely at the will of Landlord.

\* \* \* \* \* \*

35. Upon the end of the term of this lease, and thereafter until once terminated, this lease will renew itself from year to year unless either party notifies the

other within twelve (12) months prior to expiration of a renewal period."

The Defendant paid its rent regularly and otherwise complied with the terms and provisions of the lease contract.

By letter dated November 2, 1970, the Defendant tenant George H. McFadden & Bro., Inc. notified a partner of Plaintiff, I. E. Hanover, as follows:

"It is with regret that I have to inform you that we have decided not to renew our lease of June 23, 1969 when it expires on July 31, 1971."

On July 31, 1971, the last day of the two-year period, the Defendant surrendered possession of the premises. The landlord unsuccessfully tried to mitigate his damages by leasing the property to other tenants. On November 28, 1972, suit was filed by the Plaintiff landlord against the Defendant tenant for $31,000 contending that paragraph 35 of the lease contract provided for a mandatory extension of the lease contract for a third year.

The case was tried before the Trial Judge without a jury. Mr. I. E. Hanover and Marvin L. Ratner, an attorney of the Memphis Bar, both partners in the National Garage, owners of the building in controversy, testified as witnesses for the Plaintiff. Mr. Erich A. Catmur, Executive Vice President of Valmac Industries, the successor Corporation to George C. McFadden & Bro., Inc., testified for the Defendant. These same witnesses were the parties who had negotiated over a period of several months prior to June 24, 1969, which negotiations resulted in the lease in controversy.

No objection was made to the testimony by the parties of their intentions in drafting various portions of the contract. Mr. Marvin Ratner was a principal draftsman of the document. However, Defendant's Vice President, Mr. Catmur, and attorney, Mr. Allen, carefully considered every section of the contract before it was executed. Several changes were made before it was finalized.

Mr. Ratner testified that he drafted paragraph 35 partly in answer to a suggestion of Mr. Catmur in a letter of November 1, 1968, addressed to Mr. Hanover concerning an automatic renewal and we copy the suggestion which is a paragraph from the letter as follows:

"We also would like to see the lease drawn where it would be automatically extended for additional periods of one year subject to either party's right to give each other 12 months prior notice of their intention not to continue."

In that same letter Mr. Catmur offered to take a two-year lease and we quote from the letter as follows:

"Due to the obsolescence of the National Garage Building compared to modern structures and the attendant lack of comfort and efficiency, we do not feel that any increase in rental is justified; the best we can do, therefore, is to offer to take a two-year lease from August 1, 1969 to July 31, 1971 at a rental of $31,000 per annum contingent upon the following work being performed: . . ."

His Honor the Trial Judge held that a proper interpretation of the lease was that the parties intended to enter into only a two-year lease and that paragraph 35 does not extend the lease for an additional twelve-month period or for any additional period and the Defendant was therefore entitled to vacate the premises on July 31, 1971, and was not liable to the Plaintiff for any rental payments thereafter.

Assignment of error No. I insists that: "The Court erred in finding that the parties intended to enter into only a two-year lease for it made no finding that the lease was ambiguous, and ambiguity must be found before the intentions of the parties can be ascertained."

■ This assignment of error must be overruled for two reasons: (1) If His Honor the Trial Judge did find the contract unambiguous, then it was the duty of the Court to determine the intention of the parties as expressed in the contract regardless of their unexpressed intentions. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955). Also *Bartlett v. Philip-Carey Mfg. Co.*, 216 Tenn. 323, 392 S.W.2d 325 (1965).

(2) If the Trial Judge found the contract ambiguous, and there is nothing to indicate that he did not find it ambiguous, then it was the duty of His Honor the Trial Judge to determine the intention of the parties not alone from the language of the contract but also from surrounding facts and circumstances. *Commerce Street Co., Inc. v. Goodyear Tire & Rubber Co., Inc.,* 31 Tenn.App. 314, 215 S.W.2d 4, and *Pettyjohn v. Brown Boveri Corp.,* 63 Tenn.App. 546, 476 S.W.2d 268 (1971). So, whether His Honor the Trial Judge found the contract ambiguous or unambiguous, he was required to find the intentions of the parties in order to construe the contract. Assignment of error No. I is overruled.

Assignment of error No. II insists: "The Court erred in holding that the parties were bound to only a two-year lease when the notice given by Defendant was legally insufficient to prevent the lease from going into a third year."

Mr. Ratner testified that he drafted paragraph 35 of the lease in an effort to make it mandatory that the lease be extended for at least one term regardless of any notice by Defendant during the first two years; that he had instructions from his partner, Mr. Hanover, to obtain as long a lease as possible and as long a notice as possible and for this reason he did not draft paragraph 35 in accordance with the language of Mr. Catmur's suggestion but modified it substantially. Mr. Ratner admitted that he·at no time suggested to Mr. Catmur nor to his attorney that the effect of paragraph 35 was to make the lease contract actually a three-year lease instead of a two-year lease. Thus, Plaintiff's testimony shows affirmatively that there was no meeting of the minds on paragraph 35.

First, we hold that paragraph 35, within itself, is ambiguous. Mr. Ratner was the draftsman of this section and we construe the contract most strictly against the Plaintiff. *Chazen v. Trailmobile,* 215 Tenn. 87, 384 S.W.2d 1.

Under paragraph 35 the notice must be given within twelve months prior to the expiration of a renewal period. The expiration of the first renewal period would have been July 31, 1972. The Defendant gave notice of his intention not to renew and to vacate the premises in November, 1970, which was almost two years before the expiration of the first renewal period. Defendant complied with the terms of Section 35 and prevented a renewal by written notice given more than twelve months prior to the expiration of the first renewal period.

For other reasons we concur in the rejection of Plaintiff-Appellant's contention that Section 35 created a three-year lease instead of a two-year lease by the automatic renewal provision. This section is absolutely repugnant to and contradictory of Section 24 which provides that no renewal shall be effective unless in writing and signed by both parties. We have been unable to suggest a reasonable construction of the two sections so that they will be in harmony. Therefore, the latter section, 35, will be rejected. *Bank of Commerce & Trust Co. v. Northwestern National Life Insurance Co.,* 160 Tenn. 551, 26 S.W.2d 135, 68 A.L.R. 1380; *Bartlett v. Philip-Carey Mfg. Co.,* 216 Tenn. 323, 392 S.W.2d 325 (1965).

We concur in the finding of His Honor the Trial Judge that the parties did not intend a three-year contract and did not intend a contract for more than a two-year period. Assignments of error I and II are respectfully overruled.

Assignment of error No. III insists that if Plaintiff was not entitled to full compensation for a full one year, that Plaintiff was at least entitled to compensation for three months and two days or the sum of $7,922.21 because the Defendant's notice of intention to vacate lacked three months and two days of giving twelve months' notice. We have held that the lease was not renewed for any length of time under Section 35 both because proper notice was given and because Section 35 must be rejected as being in irreconcilable conflict with Section 24. Therefore, assignment of error No. III must also be overruled.

The judgment of the lower Court is affirmed at the cost of the Appellant.

MATHERNE and NEARN, JJ., concur.