IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 21, 2008 Session

## CORDOVA THE TOWN HOMEOWNERS ASSOCIATION, INC.
v.
## GILL DEVELOPMENT COMPANY, INC.

**Appeal from the Chancery Court for Shelby County**
**No. CH-04-1297-2      Arnold B. Goldin, Chancellor**

_____

**No. W2007-01692-COA-R3-CV - Filed September 12, 2008**

_____

This appeal involves the interpretation of a declaration of covenants for a homeowners' association. The declaration made the developer a member of the homeowners' association, insofar as the developer owned lots within the development. It also stated that the obligation to pay assessments on a given lot did not begin until either the lot was transferred from the developer or improvements on the lot were completed, whichever occurred first. The homeowners' association sued the developer, seeking damages for unpaid assessments on lots owned by the developer, on which improvements were not complete. The trial court granted the motion for summary judgment filed by the homeowners' association. The developer appeals. We reverse, concluding that the declaration of covenants provides that the obligation to pay assessments on the lots owned by the developer had not yet commenced.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**
**and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

John J. Heflin III, Memphis, Tennessee, for the appellant Gill Development Company, Inc.

John H. Dotson, Memphis, Tennessee, for the appellee Cordova the Town Homeowners Association, Inc.

**OPINION**

Plaintiff/Appellant Cordova the Town Homeowners Association, Inc. ("the Association") is a Tennessee non-profit, non-stock corporation with its principal place of business in Cordova, Tennessee. It is the homeowners association for a planned residential development known as Cordova the Town ("the Development"). Defendant/Appellee Gill Development Company, Inc. ("Gill Development") is a Tennessee corporation, also in Cordova, Tennessee. Gill Development developed Cordova the Town and incorporated the Association.

On April 11, 1995, after forming and incorporating the Association, Gill Development executed the Declaration of Covenants, Conditions and Restrictions for Cordova the Town Homeowners Association, Inc. ("Declaration"). Under the Declaration, the Association was given the authority to enforce the Development's covenants and conditions, and to collect and disburse regular assessments. Gill Development, insofar as it owned lots within the Development, held membership in the Association. As such, it was required to pay regular assessments to the Association under the terms of the Declaration.

Gill Development's obligation to pay assessments to the Association is set forth in Article IX, section 1 of the Declaration, which refers to Gill Development as the "Declarant." This section of the Declaration describes the various assessments due:

> The Declarant, for each Lot owned within the Property, hereby covenants and agrees to pay to the Association, and each Owner of a Lot, by acceptance of a deed therefor . . . is deemed to covenant and agree to pay to the Association (1) regular Assessments or charges, to be collected either monthly, quarterly, or annually as the Association shall determine in its reasonable discretion, (2) special Assessments for capital Improvements or other purposes . . ., and (3) emergency Assessments as may be declared by the Board of Directors.

The Association, in its discretion, chose to levy assessments on a quarterly basis. Article IX, section 8 of the Declaration provides the date on which the obligation to pay assessments commences for each lot:

> The regular Assessments provided for herein shall commence as to each Lot on the first day of the month following the transfer from Declarant or completion of Improvements thereon, whichever shall first occur.[1]

The issue in this appeal centers on the interpretation of these two provisions of the Declaration.

The Development is comprised of 107 residential lots. As of July 1, 2004, Gill Development owned 54 of the 107 lots. On that date, the Association filed this lawsuit against Gill Development in the Chancery Court for Shelby County, seeking damages for unpaid assessments. The complaint alleged that, between 2001 and 2004, Gill Development had failed to pay assessments on the 54 lots that it still owned, as well as on 4 other lots that it sold before commencement of the action. In Gill Development's answer, it admitted that it did not pay the assessments in question, but asserted that it was under no obligation to do so.

---

[1] The word "improvements" is defined in the Declaration as "the structures, walls, pavements, plantings, and other additions built or placed on the Lots."

Subsequently, the Association moved for partial summary judgment on the issue of Gill Development's liability for unpaid assessments on 54 lots that it still owned and the 4 lots that were transferred before the complaint was filed.[2]

In support of its response to the Association's summary judgment motion, Gill Development filed the affidavit of its president, Raymond B. Gill III ("Gill"). In his affidavit, Gill admitted that Gill Development once owned or still owned the lots on which assessments were being sought, but stated that the improvements on those lots had not been completed. Consequently, Gill Development maintained that it was not under an obligation to pay any assessments.

The trial court granted the Association's motion for partial summary judgment, holding that the Association was entitled to judgment as a matter of law on the issue of Gill Development's liability for the assessments sought. It also awarded prejudgment interest and attorney's fees to the Association. In its order, the trial court added: "The Court further and specifically finds that [Gill Development], as an owner of property in the [Development], and as a member of the Association, is obligated to pay regular assessments just as other owners and members." The trial court then ordered that a writ of inquiry be held to determine the amount of damages due.

After the grant of partial summary judgment in favor of the Association, the parties stipulated to the amount of damages and attorney's fees.[3] On July 13, 2007, the trial court approved the stipulation, making the judgment in favor of the Association final. Gill Development then filed this appeal.

On appeal, Gill Development raises one issue: whether the trial court correctly interpreted the Declaration in holding Gill Development liable for regular assessments on lots that it owned on which the improvements had not been completed.

Summary judgment should be granted when the moving party demonstrates an absence of any material factual dispute, and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. As only legal issues are in dispute, we review the lower court's grant of the summary judgment *de novo* on the record with no presumption of correctness. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997).

On appeal, Gill Development argues that the language of the Declaration is unambiguous. Focusing on article IX, section 8 of the Declaration, set forth above, Gill Development asserts that

---

[2]On the 4 lots that Gill Development had transferred, the Association sought assessments up to the date of the transfer.

[3]The parties stipulated that the Association would be awarded $109,662.43 for unpaid assessments, $24,000 in attorney's fees, and agreed on a formula for the determination of prejudgment interest. They also stipulated that the accuracy of the amount of the assessments would not be challenged on appeal.

it is not required to pay assessments on the lots that it owns until the improvements on such lots are completed.[4]

In response, the Association, argues that section 8 cannot be harmoniously interpreted with the other provisions in the Declaration, and that section 8 is in fact repugnant to the provisions in the Declaration, because Gill Development is a member of the Association and is required to pay regular assessments.[5] The Association maintains that Gill Development should be required to pay regular assessments in the same way as the other members of the Association: on the basis of lots owned, regardless of the whether the improvements have been completed.

Resolution of this dispute requires interpretation of the terms of the Declaration. At the outset, we note that our construction of the Declaration must proceed as would construction of any other written agreement. *See Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 38-39 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, our first concern is the contracting parties' mutual intent. *Petty v. Sloan*, 277 S.W.2d 355, 360 (Tenn. 1955). If we find the Declaration to be unambiguous as it is written, the intention of the parties will be determined by the Declaration's plain meaning. *Id.* at 358. If a material part of the Declaration appears to be ambiguous, we look to extrinsic evidence. The ambiguity may be resolved against the party who drafted the Declaration. *Nat'l Garage Co. v. George H. McFadden & Brother, Inc.*, 542 S.W.2d 371, 374 (Tenn. Ct. App. 1975) (citations omitted); *Maxwell v. Land Developers, Inc.*, 485 S.W.2d 869, 874 (Tenn. Ct. App. 1972); *see also Opryland Hotel, L.P. v. Millbrook Distribution Services, Inc.*, No. 01A01-9810-CH-00551, 1999 WL 767816, at *6 (Tenn. Ct. App. Sept. 29, 1999).

Under article IX, section 1, the parties bind themselves to the obligations created by the terms of the Declaration. All members of the Association, including Gill Development, are required to pay regular assessments. All members are required to pay such assessments "for each Lot owned" within the Development, without mention of improvements. The Association would have section 1 enforced without reference to the remainder of the Declaration. This we decline to do.

Article, IX, section 8, of the Declaration acknowledges the existence of the members' obligation to pay regular assessments, and unambiguously states the point in time at which that obligation begins. In short, it provides *when* the obligation commences. Under section 8, regular assessments on lots within the Development are not due until "the first day of the month following the transfer from [Gill Development] or completion of Improvements thereon, whichever shall first occur." The interpretation advocated by the Association, and adopted by the trial court, in essence nullifies section 8. Section 8 of the Declaration, however, can be interpreted consonantly with the other provisions; consequently, we are not at liberty to excise it from the document. *See Associated Press v. WGNS, Inc.*, 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961).

---

[4]*See supra* note 1.

[5]The Association argues tangentially that the terms of the Declaration are ambiguous because its interpretation of the Declaration differs from that of Gill Development.

It is undisputed that the lots for which the assessments are sought are owned by Gill Development or were owned by Gill Development at one time. It is also undisputed that the improvements on those lots were incomplete at the time when the assessments were allegedly due. Accordingly, Gill Development's obligation to pay assessments had not yet commenced. Therefore, we must conclude that the Association's motion for partial summary judgment should have been denied.

The decision of the trial court is reversed, and the cause remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed to the Appellee, Cordova the Town Homeowners Association, Inc., for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE